**Books A. MOTTO and Edna D. Motto, Plaintiffs,**

v.

**CITY OF UNION CITY, Paul Kingsbury, James Madonna, Charles Brema, Defendants.**

**No. CIV.A. 95–5678(KSH).**

United States District Court, D. New Jersey.

Jan. 20, 1998.

Lauren B. Cohen, Paramus, NJ, for Plaintiffs.

Robert Levy, Scarinci & Hollenbeck, Allan C. Roth, Secaucus, NJ, John A. Young, Jr., Peter R. Willis, Jersey City, NJ, John David Lynch, McAlevy & Lynch, Union City, NJ, for Defendants.

## INTRODUCTION

HEDGES, United States Magistrate Judge.

This matter comes before me on plaintiff's application for reasonable accommodations at trial. I have considered the papers submitted in support of and in opposition to the application. There was no oral argument. Rule 78.

## BACKGROUND

Plaintiff requests that he be provided, as a reasonable accommodation, with a learning disability specialist to assist him during his testimony at trial. The specialist would "paraphrase complex language during []examination so as to enable [plaintiff] to understand and respond to . . . questions accurately." Pl. Br. at 7. In support of his request plaintiff submits a letter, dated November 5, 1997, from his treating psychologist, Dr. Richard Silvestri. This states in part:

During my examination, it was readily apparent that ... [plaintiff] had difficulty understanding and paying attention to the question I asked. When I discussed this with him, he acknowledged that at times he responded without fully understanding my question and his attention frequently wandered. As a result, I had to review each question and modify my vocabulary to ensure that he responded appropriately. In my opinion, ... [plaintiff] suffers from Attention Deficit Disorder with developmental delay and auditory processing problems (D.S.M.IV, 314.00), and he would require assistance from a learning disability specialist during his testimony to enable him to accurately present himself.

At my request, the parties submitted briefs on two issues: (1) what authority, if any, entitles plaintiff to such accommodations; and (2) what impact, if any, such accommodations would have on the defendants' right to cross-examine plaintiff.

### DISCUSSION

The Administrative Office of the United States Courts promulgates guidelines for the day-to-day operations of the Judiciary. Plaintiff relies on the "Guidelines for Providing Services to the Hearing–Impaired and Other Persons with Communications Disabilities," *Guide to Judiciary Policies and Procedures,* Vol. I (Administrative Manual), Ch. III, Part H (1997) (hereinafter, the "Guidelines"), which, in subsection (1), titled "General Policy," states, "it is the policy of the Judicial Conference that all Federal courts provide reasonable accommodations to persons with communications disabilities." Plaintiff argues that his condition is a "communications disabilit[y]" within the meaning of the Guidelines.

The Guidelines provide no definition of "communication disability," nor does there appear to be any reported opinion discussing or applying the Guidelines. However, I will presume, for the purpose of this ruling, that plaintiff's condition is a "communications disability."

Subsection (2) of the Guidelines states:

*Sign Language Interpreters and Other Auxiliary Aids and Services.* Each federal court is required to provide, at judiciary expense, sign language interpreters or other appropriate auxiliary aids and services to participants in federal court proceedings who are deaf, hearing-impaired, or have other communications disabilities. The court shall give primary consideration to a participant's choice of auxiliary aid or service.

"Auxiliary aids and services" include qualified interpreters, assistive listening devices or systems, or other effective methods of making aurally delivered materials available to individuals with hearing impairments. * * * * "Primary consideration" means that the court is to honor a participant's choice of auxiliary aid or service, unless it can show that another equally effective means of communication is available, or that use of the means chosen would result in a fundamental alteration in the nature of the court proceeding or in undue financial or administrative burden. [footnote omitted].

Here, plaintiff's choice of "auxiliary aid or service" is a learning disability specialist. The specialist's function will be to "paraphras[e] from a graduate or post-graduate level vocabulary and sentence structure to that of an eighth grade level (as required by the [p]laintiff) to enable [plaintiff] to understand ... question[s]." Pl. Br. at 8.

The problem of eliciting accurate and productive testimony from witnesses who, whether due to infancy, disability, or lack of education, are unable to understand the questions posed to them is one faced by courts throughout the nation on a daily basis. Often the solution is a simple adjustment in the procedural norms which govern examinations. Plaintiff, for example, cites the practice of allowing counsel to ask infants leading questions on direct examination. Pl. Br. at 3. The Federal Rules of Evidence anticipate such situations. *See, e.g.,* Rule 611(c) (leading on direct permitted where "necessary to develop the witness' testimony."). Here, under Rule 611(a),[1] the Court can accommodate

---

**1.** Rule 611(a) provides that, "[t]he court shall

exercise reasonable control over the mode and

plaintiff's condition simply by asking counsel to phrase questions in a manner which renders them more understandable. This solution provides a means of communication "equally effective" to plaintiff's choice of a learning disability specialist. Attorneys often are asked to rephrase questions, something they are able to do without the need for special training or expertise. Indeed, retaining, at the Court's expense, a "specialist" to perform a function which the interrogating attorney is perfectly capable of undertaking would place an undue burden on limited financial resources.

Allowing counsel, rather than a third party, to rephrase their own questions will also best assure that there is no "fundamental alteration in the nature of the ... proceeding." Defendants' right to cross-examine plaintiff is not a frivolous one. The Supreme Court has identified cross-examination as "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The centrality of cross-examination to ensuring a fair trial in the criminal context is reflected in the Sixth Amendment's Confrontation Clause. In the civil context, the right of a party to cross-examine witnesses derives from the Due Process Clause of the Fifth Amendment. *See Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970) ("In almost every setting where important decisions turn on questions of fact, due precess requires an opportunity to confront and cross-examine adverse witnesses.") Allowing defense counsel to retain control over the wording of their questions will minimize any impact on defendants' right to cross-examine plaintiff.

The Court Interpreters Act, 28 U.S.C. § 1827, also cited by plaintiff, does not alter this determination. The Act mandates the appointment of an interpreter where the presiding judicial officer determines that a party either:

> order of interrogating witnesses and presenting evidence so as to ... make the interrogation and presentation effective for the ascertainment of the truth."

(A) speaks only or primarily a language other than the English language; or

(B) suffers from a hearing impairment (whether or not suffering also from a speech impairment)

so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony. [28 U.S.C. 1827(d)(1)].

This mandatory provision, however, applies only to "judicial proceedings instituted by the United States." § 1827(d)(1), which this matter is not. *See In re Morrison,* 22 B.R. 969, 970 (Bankr.N.D.Ohio 1982) (no entitlement to interpreting services under Act where matter was "'initiated' by the Debtors ... not by the United States."). The Act defines the phrase "judicial proceedings instituted by the United States" as:

> all proceedings, whether criminal or civil, including pretrial and grand jury proceedings (as well as proceedings upon a petition for a writ of habeas corpus initiated in the name of the United States by a relator) conducted in or pursuant to the lawful authority and jurisdiction of a United States district court. [§ 1827(j)].

In arguing for the application of the Act here, plaintiff, using ellipses, shortens the definition to: "all proceedings, whether criminal or civil ... conducted in or pursuant to the lawful authority and jurisdiction of a United States district court." Pl. Br. at 3. Under this reading, however, the phrases "instituted by the United States" and "initiated in the name of the United States" become mere surplusage, a result Congress could not have intended.[2]

Lastly, plaintiff urges that "equal protection principles" compel the provision of a specialist. Pl. Br. at 6. Plaintiff relies on *Lake v. Arnold,* 112 F.3d 682 (3d Cir.1997), which holds that the mentally retarded constitute a cognizable "class" whose members may maintain an action under the civil rights

2. Indeed, when Congress desired to convey the meaning plaintiff urges, it employed the phrase "in a judicial proceeding, whether or not the proceeding is instituted by the United States." *See* § 1827(*l*).

conspiracy statute, 42 U.S.C. § 1985(3). Even if I presume that, as plaintiff alleges, the learning disabled are a class analogous to the mentally retarded, *Lake* does not compel the relief plaintiff seeks. While *Lake* identifies the mentally retarded as a "group[] which ha[s] at times required the aid of the courts in securing equal treatment under the laws," *Lake,* 112 F.3d at 687, the "aid of the courts" referred to is the securing of a class member's rights through a civil action under § 1985(3), not the crafting by the courts of individual accommodations on a case-by-case basis.

## CONCLUSION

For the reasons set forth above, plaintiff's application is **DENIED.**

**SO ORDERED.**